[Cite as *State v. Grieshop*, 2020-Ohio-392.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28481 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-1411 |
| | : | |
| JOSEPH GRIESHOP | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of February, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

KELLE M. SAULL, Atty. Reg. No. 0083746, DEREK R. DAILEY, Atty. Reg. No. 0084832, SARAH M. WALTER, Atty. Reg. No. 0095462 and JESSICA L. MONDAY, Atty. Reg. No. 0088067, 106 South Sandusky Avenue, Upper Sandusky, Ohio 43351
    Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant, Joseph Grieshop, appeals from his conviction for one count of abduction, a third degree felony in violation of R.C. 2905.02(A)(2). Raising two assignments of error, Grieshop argues that his conviction should be vacated because the evidence against him was quantitatively and qualitatively inadequate to prove his guilt, and because his trial counsel declined to cross-examine two of the State's witnesses, thereby failing to provide effective representation. We find that the evidence received by the jury was adequate to support the verdict, and that Grieshop's trial counsel was not ineffective. Therefore, Grieshop's conviction is affirmed.

## I. Facts and Procedural History

{¶ 2} In December 2017, Grieshop and Ranjani Powers were married. Transcript of Proceedings 206:1-206:10 and 328:20-329:5, May 7-9, 2019. Their relationship soon soured, and Grieshop began sleeping in the basement of the martial residence. *See id.* at 206:19-207:7 and 329:12-330:7. By Saturday, March 31, 2018, Powers had decided that she and Grieshop should part company, and late that evening, the two had an argument. *Id.* at 207:8-210:4 and 330:8-331:14.

{¶ 3} Powers, who apparently objected to Grieshop's consumption of alcohol, descended into the basement and began disposing of his alcoholic beverages by emptying them into a utility sink. *See id.* at 209:17-210:4 and 330:8-333:18. The basement included a coal room in which Powers believed that Grieshop kept an additional supply of alcoholic beverages, and when she entered the coal room to search, Grieshop shoved or threw her against a wall and locked her inside. *See id.* at 209:17-214:16.

{¶ 4} Grieshop denied that he intentionally shoved Powers and that he intentionally locked her in the coal room. *Id.* at 332:6-333:23. Instead, Grieshop claimed that he

"slammed the door" to the coal room in anger at Powers's actions and left the house to buy beer. *Id.* He testified that upon his return, he drank a can of beer in the driveway, and from that vantage, he saw the light in Powers's bedroom be turned on. *Id.* at 334:1-334:14. At that point, he resumed his place in the basement and woke up the next morning—Sunday, April 1, 2018—at approximately 6:00 a.m.; he testified that Powers remained in her bedroom until 7:00 to 7:30 a.m. *Id.* at 334:4-335:21.

{¶ 5} Powers, on the other hand, testified that Grieshop left and returned several times, intermittently lecturing her about his motive for locking her in the coal room and threatening to kill her. *Id.* at 218:13-220:18. Eventually, to thwart her attempts to escape, Grieshop cut the power line to the single light in the room and screwed or nailed boards over the door. *Id.* at 220:3-223:21. He fell asleep after several hours. *Id.* at 223:9-226:22. At approximately 7:00 a.m., Powers knocked on the inside of the door, and realizing that she was awake, Grieshop told her that he could hear her. *Id.* at 232:9-233:21. Grieshop finally released Powers not long afterward, once she had agreed that she would not disclose to anybody what had transpired. *Id.* at 233:22-235:24. He left the house again, and later that day, Powers had Easter dinner at her sister's house. *Id.* at 236:17-237:3 and 246:18-247:21. She did not tell her family about the incident. *Id.* at 247:14-247:21.

{¶ 6} Grieshop returned to the house the following morning—Monday, April 2, 2018—at approximately 2:00 to 3:00 a.m. *Id.* at 249:12-250:4. Between 6:00 and 6:30 a.m., Powers confronted him and surreptitiously made a recording of the ensuing conversation with her cellular telephone. *Id.* at 249:22-251:21 and 336:13-336:21. Grieshop then left for work. *Id.* at 253:10-253:21 and 339:5-341:10.

{¶ 7} On the evening of Tuesday, April 3, 2018, officers with the Dayton Police Department visited the house to place Powers under arrest on a charge of domestic violence in response to a complaint submitted by Grieshop. *Id.* at 254:5-255:2 and 339:5-341:10. Powers described for the officers how Grieshop had confined her in the coal room, and one of the officers proceeded to the basement to take photographs, noticing among other things that the power line to the light in the coal room had been cut. *Id.* at 255:3-255:10 and 291:12-298:20.

{¶ 8} The officers transported Powers to the Montgomery County Jail that night, but after her bond was paid, she was released on the morning of Wednesday, April 4, 2018. *Id.* at 260:11-261:6. At her arraignment later the same day, Powers discovered that the charges against her had been dropped. *Id.* at 261:7-261:19.

{¶ 9} On Thursday, April 5, 2018, Powers contacted the Artemis Center, seeking advice, and on Friday, April 6, 2018, she spoke with Detective Nancy Kloos of the Dayton Police Department, who took her statement. *Id.* at 261:17-262:24, 304:1-304:25 and 306:12-307:10. Detective Kloos interviewed Grieshop on Monday, April 9, 2018; Grieshop waived his *Miranda* rights and executed a written statement of his own in which he " 'apologize[d] to * * * Powers and the [c]ourt for his actions,' " which he characterized as " 'wrong and not appropriate.' " *Id.* at 312:16-315:2, quoting State's Exhibit 22.

{¶ 10} On May 10, 2018, a Montgomery County grand jury issued an indictment against Grieshop charging him with one count of abduction under R.C. 2905.02(A)(2). His case was tried to a jury, and on May 9, 2019, the jury found him guilty as charged. The trial court filed a judgment entry on June 20, 2019.

{¶ 11} Grieshop timely filed a notice of appeal on June 21, 2019, but we dismissed

the appeal for want of a final, appealable order in our decision of July 23, 2019. One day later, the trial court filed an amended judgment entry, and on July 25, 2019, Grieshop timely commenced the instant appeal.

## II. Analysis

{¶ 12} For his first assignment of error, Grieshop contends that:

THE JURY VERDICT OF GUILTY TO ABDUCTION WAS BASED ON INSUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} Grieshop argues that the "evidence in this case was both insufficient and against the manifest weight of the evidence," because Powers "didn't disclose the alleged event to anyone, [whether] friend, family or law enforcement[,] until at least 24 hours afterward," and observing that Powers initially did not intend to file a criminal complaint, he concludes that "the facts did not support a guilty verdict of abduction" in this " 'he said, she said' scenario." Appellant's Brief 10-11; *see also* Transcript of Proceedings 252:11-254:4. In other words, Grieshop argues that his conviction should be vacated because Powers's testimony was not credible. Appellant's Brief 10-11.

{¶ 14} Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the * * * verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based on the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond

a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 15} By contrast, in a challenge based on the weight of the evidence, an appellate court considers not only the quantity of the evidence, but the quality of the evidence, as well. *See State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *State v. Thigpen*, 2016-Ohio-1374, 62 N.E.3d 1019, ¶ 6 (8th Dist.). Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *Martin* at 175.

{¶ 16} Although the appellate court "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses," the court nevertheless "may determine which of several competing inferences suggested by the evidence should be preferred." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 6. A determination that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of the sufficiency of the evidence, because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation

omitted.)   *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary* at ¶ 11.

{¶ 17} Grieshop nominally challenges the sufficiency of the evidence against him. Here, the indictment charged Grieshop with one count of abduction in violation of R.C. 2905.02(A)(2).   To obtain a conviction, the State had to prove that, without any legal immunity, license or right, Grieshop knowingly: (1) used force or made threats directed at Powers; (2) restrained Powers's liberty; and (3) either created a risk that Powers would thereby suffer physical harm, or caused Powers to experience fear.   *See* R.C. 2905.02(A)(2).   Powers's own testimony, if accepted as truthful by the jury, provided sufficient evidence to prove Grieshop's guilt on all three of these elements, and officers with the Dayton Police Department discovered physical evidence corroborating Powers's account of Grieshop's actions.   Transcript of Proceedings 209:17-214:16, 218:13-226:22, 232:9-235:24, 249:22-251:21, 291:12-298:20, 306:12-312:15.   Furthermore, the written statement executed by Grieshop during his interview with Detective Kloos, in which Grieshop offered an apology, could reasonably have been interpreted by the jury as a tacit acknowledgement of his guilt.   *Id.* at 312:16-315:2.

{¶ 18} Grieshop also insists that the jury found him guilty contrary to the manifest weight of the evidence, and because the only direct evidence available to the jury was the parties' own testimony, the verdict depended in large part on the jury's assessment of Powers's credibility and that of Grieshop himself.   In his brief, Grieshop asks rhetorically why, if Powers's "story [were] true," she would not have initially intended to file a complaint against him.   Appellant's Brief 11.   The State itself asked Powers

essentially the same question at trial, and the jury had the opportunity to observe her response and demeanor as part of its consideration of the credibility of her explanation. Transcript of Proceedings 253:15-254:7.

{¶ 19} Having completed an independent evaluation of the transcript, we find no reason to second-guess the jury's assessment of Powers's credibility merely because she hesitated to lodge a criminal complaint against Grieshop, particularly in light of the corroborating physical evidence and the statement executed by Grieshop. Consequently, we hold that the State presented sufficient evidence to support Grieshop's conviction, and that the jury did not find Grieshop guilty contrary to the manifest weight of the evidence.    Grieshop's first assignment of error is overruled.

{¶ 20} For his second assignment of error, Grieshop contends that:

> THE JURY VERDICT OF GUILTY TO ABDUCTION WAS BASED
> ON INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 21} Grieshop argues that his trial counsel failed to provide effective assistance because she did not cross-examine Powers at all and only engaged in a limited cross-examination of Detective Kloos.   Appellant's Brief 11.   Omitting mention of his own testimony, Grieshop faults counsel for "leaving the [j]ury with only the victim's version of events."   *Id.*

{¶ 22} To prevail on a claim of "ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."   *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.).    The *Strickland* test requires a showing that: "(1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel]

guaranteed under the Sixth Amendment to the United States Constitution; and (2) * * * defense counsel's errors prejudiced the defendant." *Id.*, citing *Strickland* at 687. Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). To show prejudice, the defendant bears the burden to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of [a given] proceeding would have been different." *Id.* at 694; *State v. Southern*, 2d Dist. Montgomery No. 27932, 2018-Ohio-4886, ¶ 47. A failure to make either showing defeats the claim. *Cardenas* at ¶ 38.

{¶ 23} Notwithstanding his argument that counsel was ineffective for allowing the jury to hear "only [Powers]'s version of events," Grieshop himself took the stand and offered his own version of events. Appellant's Brief 11. Given the deference due counsel's performance, we find it likely that counsel had professionally sensible reasons for choosing not to cross-examine Powers and to limit her cross-examination of Detective Kloos. Counsel, for example, might have been concerned that a cross-examination of Powers would inspire sympathy among the jurors, and the most damaging aspect of Detective Kloos's testimony was the statement that Grieshop himself had written. Grieshop, in any event, has not demonstrated a reasonable probability that the outcome of his trial would have been different if counsel had cross-examined Powers or if counsel had cross-examined Detective Kloos at greater length. Grieshop's second assignment of error is overruled.

**III. Conclusion**

{¶ 24} The State introduced sufficient evidence during Grieshop's trial to prove his guilt with respect to each of the elements of abduction under R.C. 2905.02(A)(2), and Grieshop has not demonstrated that the jury clearly lost its way in finding him guilty. In addition, Grieshop's trial counsel provided professionally reasonable representation, and Grieshop has not shown that he was prejudiced by counsel's performance. Therefore, Grieshop's conviction is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Michael P. Allen
Kelle M. Saull
Derek R. Dailey
Sarah M. Walter
Jessica L. Monday
Hon. Michael W. Krumholtz