[Cite as *State v. Luciano*, 2023-Ohio-3753.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 9-23-24

    v.

ANTHONY LUCIANO,                    **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 22-CR-385

**Judgment Affirmed**

**Date of Decision: October 16, 2023**

APPEARANCES:

    *W. Joseph Edwards* for Appellant

    *Martha Schultes* for Appellee

**WALDICK, J.**

{¶1} Defendant-appellant, Anthony Luciano ("Luciano"), brings this appeal from the March 8, 2023, judgment of the Marion County Common Pleas Court sentencing him to serve 36 months in prison after he was convicted by a jury of Abduction in violation of R.C. 2905.02(A)(2), a third degree felony, and Assault in violation of R.C. 2903.13(A), a first degree misdemeanor. On appeal, Luciano argues that the trial court improperly limited cross-examination of the victim and that his conviction for Abduction was against the manifest weight of the evidence.

*Background*

{¶2} On July 6, 2022, Luciano was indicted for Abduction in violation of R.C. 2905.02(A)(2), a third degree felony, Disrupting Public Services in violation of R.C. 2909.04(A)(1), a fourth degree felony, and Assault in violation of R.C. 2903.13(A), a first degree misdemeanor. Luciano pled not guilty to the charges.

{¶3} On January 26, 2023, Luciano proceeded to a jury trial wherein he was convicted of Abduction and Assault as indicted, but he was acquitted of Disrupting Public Services. On March 8, 2023, Luciano was sentenced to serve 36 months in prison on the Abduction charge, and a concurrent 180 days on the Assault charge.[1] It is from this judgment that Luciano appeals, asserting the following assignments of error for our review.

---

[1] The trial court also terminated Luciano's post-release control from a prior case and imposed an additional 643 days in prison, consecutive to the prison term on the Abduction charge.

**First Assignment of Error**

**Defendant-appellant was denied his right to cross examine the State's key witness thereby violating his rights under the Ohio and Federal Constitutions.**

**Second Assignment of Error**

**The trial court erred in entering a finding of guilty because the verdict was against the manifest weight of the evidence thereby violating appellant's rights under the Ohio and Federal Constitutions.**

{¶4} For ease of discussion, we elect to address the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

{¶5} In his second assignment of error, Luciano argues that his conviction for Abduction was against the manifest weight of the evidence.

Standard of Review

{¶6} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

{¶7} Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

## Controlling Statute

{¶8} Luciano challenges his conviction for Abduction in violation of R.C. 2905.02(A)(2), which reads as follows:

> (A)   No person, without privilege to do so, shall knowingly do any of the following:
>
> * * *
>
> (2)   By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]

## Evidence Presented

{¶9} On June 30, 2022, Luciano was staying at the America's Best Value Inn in Marion with his girlfriend Alicia Z. While the couple was together at the motel, Alicia received a text message from her uncle regarding Alicia's "ex that was currently in [] OSU fighting for his life, and [the ex] wanted to see [Alicia]." (Tr. at 103). Luciano read the text message and became angry, inciting an argument.

-4-

{¶10} Alicia testified that she tried to leave the motel, but when she went to grab her things, Luciano cornered her and "tackled" her onto the bed, wrestling her for her keys. (*Id.* at 104). Alicia testified that Luciano put her in a chokehold until she let go of her keys. When Alicia let go of her keys, Luciano released the chokehold and Alicia went to the opposite side of the bed, asking Luciano to let her leave. Alicia testified that Luciano told her she was not going anywhere.

{¶11} Alicia testified that when Luciano turned his back, she grabbed the motel phone and tried to call 911, but Luciano pulled the cord out of the phone. Alicia testified that she yelled for help but Luciano hit her in the face with a closed fist. Afterward, Alicia testified that she fell back into a chair and cried. She asked Luciano to let her go and eventually he let her leave.

{¶12} Alicia walked out of the motel room and Luciano followed her to her car. Alicia testified that she called her uncle on her cell phone and Luciano tried to take the phone out of her hand. Alicia indicated that there was another lady in the parking lot during the interaction, so Alicia got the lady's attention and indicated she needed help and to call 911. Alicia and Luciano then got into Alicia's car, and Alicia told Luciano that the police were coming. Luciano got out of the vehicle and went into the motel room, locked the door and blocked it with a chair.

{¶13} Law enforcement officers responded to the scene based on a "hang up" call and another call indicating a man had assaulted a woman. The officers met

with Alicia in the parking lot. Alicia was observed to have some scratch marks on her arm and a slightly "raised" area under her right eye. Photographs were taken of the injuries.

**{¶14}** After Luciano would not answer the door to the motel room, the motel manager assisted law enforcement with gaining access to the room. Luciano denied anything occurring beyond an argument. One officer indicated that the motel room looked like there had been a slight disturbance.

**{¶15}** The officers obtained surveillance footage from the motel, but the footage did not show anything that occurred inside the room itself. Luciano stressed that in the video, when Alicia exited the motel room, she did not look fearful and he was not controlling her movements. However, the video did appear to show Luciano attempt to grab the phone out of Alicia's hand in the parking lot.

Analysis

**{¶16}** At the outset of our review, we note that Luciano's stated assignment of error challenges only the manifest weight of the evidence; however, in the body of his brief he also cites the standard of review for "sufficiency of the evidence." Luciano does acknowledge that the concepts of sufficiency and weight of the evidence are categorically different, thus given his stated assignment of error, and the actual argument in his brief, we will review only his challenge to the weight of the evidence.

{¶17} In challenging his Abduction conviction, Luciano summarily argues that we should review the evidence because while "[t]he evidence was clear that Appellant assaulted [Alicia] * * * Appellant believes that an issue exists whether his conduct rose to the level of abduction." (Appt.'s Br. at 9). We disagree.

{¶18} The evidence affirmatively established that Luciano had no privilege to restrain Alicia's liberty. Further, Alicia testified that when she attempted to leave the motel room, Luciano tackled her and put her in a chokehold until she dropped her keys. Thus he acted by force and restrained her liberty.

{¶19} In addition, Alicia had scratches on her from the altercation, going beyond a risk of physical harm to actual physical harm. Moreover, Alicia also testified that she was afraid of Luciano when he was restraining her liberty on the bed. Thus all of the elements of Abduction were satisfied here. *See State v. Tvaroch*, 11th Dist. Trumbull No. 2012-T-0008, 2012-Ohio-5836, ¶ 54-57; *State v. Grieshop*, 2d Dist. Montgomery No. 28481, 2020-Ohio-392, ¶ 18.

{¶20} In sum, we do not find that this is one of the rare cases where the evidence weighs heavily against conviction or that the jury created such a manifest miscarriage of justice that this trial must be reversed.[2] *See Haller*, *supra*. Therefore, Luciano's second assignment of error is overruled.

---

[2] Although Luciano suggested at trial that he did not "abduct" Alicia, the actual elements of the offense require restraining the liberty of another, not moving a victim from one place to another as Luciano seems to suggest.

*First Assignment of Error*

**{¶21}** In his first assignment of error, Luciano argues that the trial court abused its discretion by determining that Luciano would not be able to present evidence that Alicia gave him substantial monetary gifts while he was incarcerated and awaiting trial.

Standard of Review

**{¶22}** A trial court has broad discretion with respect to the admission of evidence. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 37. Thus we will not disturb a trial court's evidentiary rulings absent an abuse of discretion that produces material prejudice to the aggrieved party. *State v. Gipson*, 3d Dist. Allen No. 1-15-51, 2016-Ohio-994, ¶ 48. An abuse of discretion is more than an error of judgment; it means that the trial court's determination was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

Analysis

**{¶23}** After the jury was selected but prior to the presentation of evidence, the State effectively made a motion in limine seeking to prevent Luciano from cross-examining Alicia on the fact that Alicia had sent Luciano as many as 19 care packages while Luciano was incarcerated and awaiting trial. The State argued that the evidence would not be relevant to the actual charges at issue.

**{¶24}** Defense counsel contended that the evidence was relevant to disprove whether Alicia was in fear at the time of the alleged abduction. Defense counsel also contended that the evidence could be used for impeachment purposes.

**{¶25}** The trial court disagreed with defense counsel, stating,

> I don't see how what happened after the fact, especially in that sense, buying him a meal or putting money on the books or whatever happened is relevant to the incident. I mean, if something changes with her testimony, you know, that makes it become relevant. But at this point, I'm trying to figure out how that can be relevant. I don't think it is.

(Tr. at 99). After some further argument on the issue, the trial court ruled that the evidence was not relevant, but the trial court indicated that the issue could be revisited depending on Alicia's actual testimony.

**{¶26}** Importantly, during Alicia's testimony, she was not questioned about her current relationship with Luciano or the gifts she provided him while he was incarcerated. As the trial court's ruling prior to trial was interlocutory and the issue was not revisited during Alicia's actual testimony, this issue is generally considered waived for purposes of appeal. *See State v. Grubb*, 28 Ohio St.3d 199 (1986), at syllabus; *State v. Brown*, 38 Ohio St.3d 305, 311-312 (1988).

**{¶27}** However, even if the issue was not waived, we find no abuse of discretion with the trial court's determination given that Alicia's mental state months after the incident had no bearing on her mental state at the time she was being physically restrained. Moreover, as stated previously, fear did not need to be

-9-

proven since Alicia was physically harmed, so even if the trial court did somehow abuse its discretion, we find no prejudicial error here. For all of these reasons, Luciano's first assignment of error is overruled.

*Conclusion*

{¶28} Having found no error prejudicial to Luciano in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Marion County Common Pleas Court is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and ZIMMERMAN, J., concur.**

**/jlr**