[Cite as *State v. Sahnd*, 2024-Ohio-5840.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 30102 |
| v. | : | Trial Court Case No. 2024 CR 00013 |
| JEFFREY SAHND | : | (Criminal Appeal from Common Pleas Court) |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 13, 2024

. . . . . . . . . . .

CHIMA R. EKEH, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant, Jeffrey Sahnd, appeals from his conviction for domestic violence following a jury trial in the Montgomery County Court of Common Pleas. In support of his appeal, Sahnd claims that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons outlined below, we

disagree with Sahnd's claims and will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On January 5, 2024, a Montgomery County grand jury returned an indictment charging Sahnd with one fourth-degree-felony count of domestic violence in violation of R.C. 2919.25(A) and one second-degree-misdemeanor count of criminal damaging in violation of R.C. 2909.06(A)(1). The charges stemmed from allegations that on December 27, 2023, Sahnd and his former girlfriend ("the victim") got into an argument in the parking lot of a bar during which Sahnd allegedly threw a full, open beverage can at the victim and kicked the victim's vehicle multiple times. Sahnd pled not guilty to the indicted charges and the matter proceeded to a jury trial.

{¶ 3} At trial, the State presented testimony from the victim and two law enforcement officers who investigated the victim's altercation with Sahnd. Sahnd did not call any witnesses to testify on his behalf. The following is a summary of the evidence that was presented at trial.

{¶ 4} The victim and Sahnd became boyfriend and girlfriend shortly after they met in June 2021. In July or August 2021, the victim and Sahnd began living together at the victim's residence. Sahnd moved out of the victim's residence when their relationship ended in April 2023.

{¶ 5} Despite their breakup, on December 27, 2023, the victim and Sahnd had dinner together at a restaurant in Dayton's Oregon District. During dinner, they had a heated conversation about Sahnd's prior infidelity. Because "things started to go [a] little

sideways," the victim decided to leave the restaurant and take Sahnd back to his residence. Trial Tr. (Mar. 12, 2024), p. 187.

{¶ 6} Later that evening, the victim drove to a bar in Huber Heights to meet up with some friends and coworkers. After parking in the bar's parking lot, the victim sat in her vehicle and exchanged text messages with Sahnd for 15 or 20 minutes. While doing so, the victim advised Sahnd of her location. Sahnd thereafter showed up at the parking lot where the victim was located and asked the victim to go inside the bar with him and have a drink. The victim, however, was "leery" about going inside a public establishment with Sahnd because she and Sahnd were not on good terms and she did not want to cause a spectacle in front of her coworkers. Tr. at 190. Nevertheless, the victim eventually agreed to go inside the bar with Sahnd.

{¶ 7} As the victim and Sahnd were walking in the parking lot toward the bar, they began arguing about Sahnd's infidelity again. The victim realized that she did not want to bring the argument inside the bar, so she turned around and began to walk back toward her vehicle. The victim testified that when she turned around, she was "struck in the back of the head" one time. Tr. at 190 and 193. When explaining what she felt, the victim testified: "I felt something hit me in the back and I was soaked. I just remember feeling water or something, some liquid, all over me after that point. And it was a heavy, a heavy hit." Tr. at 193.

{¶ 8} Because her hair and clothes were soaked, the victim assumed that she had been hit with a drink. The victim recalled turning around to look at Sahnd and saying: "[R]eally? You just did that?" Tr. at 192. After walking back to her vehicle, the victim

observed Sahnd approach her vehicle while cursing at her. The victim also observed Sahnd kick the headlights on her vehicle several times until they shattered. In addition, the victim observed Sahnd walk around to the passenger-side of her vehicle and kick it twice before he got into his vehicle and left the scene.

{¶ 9} The following day, the victim called the Huber Heights Police Department to report the incident with Sahnd. During the call, the victim was instructed to go to the police station so that she could speak with an officer and provide a written statement. At the police station, the victim spoke with Officer Caleb Harper and provided Ofc. Harper with a written statement as requested. She told Ofc. Harper that Sahnd had thrown "a full can of Monster" at her, that the beverage can had hit her in the head, and that she had a lump on her head. Tr. at 217-218.

{¶ 10} Ofc. Harper took a photograph of the back of the victim's head showing the area where the victim claimed she had been injured. *See* State's Ex. 2. Ofc. Harper testified that he felt around the victim's head but did not feel any bumps or other injury. Ofc. Harper also took photographs of the damage to the victim's vehicle. The photographs showed that the victim's vehicle had a shattered headlight and a large scuff mark on the rear passenger-side door. *See* State's Ex. 7-9.

{¶ 11} In addition to taking photographs, Ofc. Harper discovered video footage from a restaurant security camera that was directed at the parking lot where the altercation in question occurred. Detective Matthew Hoying of the Huber Heights Police Department later collected the video footage. The video footage was played for the jury and admitted into evidence as State's Exhibit 12.

{¶ 12} The video footage showed Sahnd holding a beverage can in his right hand as he and the victim were walking together in the parking lot toward the bar. Sahnd and the victim can be seen stopping in the parking lot to talk for a brief moment. The victim then turned around and took a couple of steps back toward her vehicle. Immediately thereafter, Sahnd threw his beverage can with great force at the victim, who was only three to four feet away from him. Liquid could be seen spilling out of the can, and the can appeared to bounce off the backside of the victim and onto the ground. The victim touched her back and turned around to look at Sahnd in response. Thereafter, the victim continued walking back toward her vehicle. Sahnd then picked up the beverage can and threw it at the victim a second time with great force. Liquid once again flew out of the beverage can, which appeared to hit the victim on the back. The victim turned around and then continued heading toward her vehicle, with Sahnd following behind her. Thereafter, Sahnd angrily kicked the victim's vehicle multiple times.

{¶ 13} After the State rested its case, the defense moved for a Crim.R. 29 acquittal, which the trial court overruled. Thereafter, the jury found Sahnd guilty of the domestic violence and criminal damaging offenses charged in the indictment. Because the parties had stipulated that Sahnd had a prior domestic violence conviction, Sahnd's domestic violence offense was a fourth-degree felony. *See* R.C. 2919.25(D)(3) and Joint Ex. I.

{¶ 14} At sentencing, the trial court imposed a 90-day jail term for criminal damaging and five years of community control sanctions for domestic violence. Sahnd's community control sanctions included several special conditions, including, but not limited to, serving 90 days in jail, having no contact with the victim, and paying the victim $1,889

in restitution.   Sahnd now appeals from his domestic violence conviction, raising two assignments of error for review.   Because they are interrelated, we will address Sahnd's assignments of error together.

**First and Second Assignments of Error**

{¶ 15} Under his first and second assignments of error, Sahnd contends that his conviction for domestic violence was not supported by sufficient evidence and was against the manifest weight of the evidence.   We disagree.

*Sufficiency of the Evidence*

{¶ 16} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."   *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997).   "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt."   (Citations omitted.)   *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).   "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact."   (Citations omitted.)   *Id.*

{¶ 17} As previously discussed, Sahnd was convicted of domestic violence in

violation of R.C. 2919.25(A), which provides that: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." A "family or household member" includes "a person living as a spouse" who "has resided with the offender." R.C. 2919.25(F)(1)(a)(i). "Person living as a spouse" includes a person who "has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

{¶ 18} Here, Sahnd does not dispute that the victim, with whom he cohabitated up until April 2023, qualified as a "family or household member." Sahnd does, however, claim that the evidence failed to establish that he knowingly caused or attempted to cause the victim physical harm. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). " 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 19} This court has recognized that the foregoing definition of physical harm "encompasses almost anything that resulted in some harm." *State v. Younker*, 2002-Ohio-5376, ¶ 26 (2d Dist.). This court has also explained that in order to convict a defendant of domestic violence, "the State is not required to prove that the victim suffered physical harm"; rather, the "[d]efendant's attempt to cause physical harm is sufficient to constitute the offense." *Id.* at ¶ 23, citing *State v. Nielsen*, 66 Ohio App.3d 609, 612 (6th Dist. 1990). The fact that a defendant "lack[s] a specific intent to cause physical harm is of no consequence, because R.C. 2919.25(A) only requires that the offender act

'knowingly.' " *Id.*

{¶ 20} In *Younker*, the defendant was found guilty of domestic violence in violation of R.C. 2919.25(A) after he threw two empty "pop cans" at his wife from a distance of three or four feet away. *Id.* at ¶ 2-3. On appeal, the defendant argued that the State had failed to present sufficient evidence that he knowingly caused or attempted to cause his wife physical harm because "it was impossible to cause physical harm to someone by throwing something as light as an empty pop can at them from three or four feet away." *Id.* at ¶ 22. However, at trial, the defendant's wife testified that "when the cans struck her in the knee, the impacts caused her some pain for a short while." *Id.* at ¶ 24. In light of the wife's testimony, this court found that the statutory definition of physical harm had been satisfied and that the credibility of the wife's testimony was a matter for the trier of fact to resolve. *Id.* Therefore, we concluded that the "[d]efendant's conviction [was] supported by legally sufficient evidence." *Id.* at ¶ 25.

{¶ 21} In the present case, Sahnd similarly claims that the State failed to present sufficient evidence establishing that he knowingly caused or attempted to cause the victim physical harm. Specifically, Sahnd claims that the video evidence merely showed that he threw an open beverage can at the ground, not at the victim. He also argues that the evidence established that the victim did not suffer any physical harm, because Ofc. Harper did not observe any injury to the victim and the photographic evidence showed no sign of injury. Sahnd further argues that there was no evidence establishing that he was aware his conduct of throwing an open beverage can on the ground near the victim would probably result in the victim's being injured, as was necessary for attempted physical

harm. Sahnd's arguments fail for multiple reasons.

{¶ 22} First, Sahnd's argument does not accurately convey what the video evidence depicted, as the video showed Sahnd throwing the beverage can at the victim, not at the ground. We do, however, find that it is difficult to see in the video exactly where the beverage can struck the victim. Nevertheless, the victim testified that the can hit her in the back of the head, that it was "a heavy, a heavy hit," and that it left a "lump" on her head. Trial Tr., p. 193 and 218. Given the nature of Sahnd's conduct as shown in the video, and given the victim's testimony stating that she was subject to a heavy hit that caused a lump on her head, like *Younker*, the victim's testimony was sufficient to establish that Sahnd knowingly caused her physical harm.

{¶ 23} Even if the jury did not think the beverage can struck the victim, actual physical harm was not required to prove domestic violence. As previously discussed, an attempt to cause physical harm suffices. At the very least, the video evidence in this case established that Sahnd threw a full, open beverage can in the victim's direction with great force at close range. Moreover, Sahnd threw the beverage can at the victim not once, but twice. Considering that evidence in a light most favorable to the State, a rational factfinder could have concluded that Sahnd knowingly attempted to cause the victim physical harm.

{¶ 24} For all the foregoing reasons, we find that, viewing the evidence in a light most favorable to the State, a rational factfinder could have concluded that the essential elements of domestic violence in violation of R.C. 2919.25(A) were proven beyond a reasonable doubt. Accordingly, Sahnd's claim that his domestic violence conviction was

not supported by sufficient evidence lacks merit.

*Manifest Weight of the Evidence*

**{¶ 25}** "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson*, 2009-Ohio-525, at ¶ 12 (2d Dist.). When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

**{¶ 26}** Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997). "This court will not substitute its judgment for that of the trier of fac[t] on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley*, 1997 WL 691510, *4 (2d Dist. Oct. 24, 1997). Therefore, "[t]he credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fac[t] to resolve." *State v. Hammad*, 2014-Ohio-3638, ¶ 13 (2d Dist.), citing

*State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶ 27} In this case, the jury was free to believe the victim's testimony indicating that she received a heavy hit to the back of her head when Sahnd threw the beverage can at her and that a lump formed on her head as a result. " 'A verdict is not against the manifest weight of the evidence [simply] because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events.' " *State v. McCary*, 2019-Ohio-4596, ¶ 33 (2d Dist.), quoting *State v. Oswald*, 2018-Ohio-245, ¶ 25 (9th Dist.). (Other citations omitted.) Even if the jury decided not to credit the victim's testimony about the beverage can hitting her in the back of the head and causing a lump, it still could have concluded from the video evidence that Sahnd attempted to harm the victim by throwing a full beverage can at her twice with great force at close range. "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2014-Ohio-3432, ¶ 24 (2d Dist.), citing *Wilson,* 2009-Ohio-525, at ¶ 14 (2d Dist.).

{¶ 28} After reviewing the entire record, weighing all the evidence and reasonable inferences, and considering witness credibility, we do not find that the jury lost its way or created a manifest miscarriage of justice by finding Sahnd guilty of domestic violence in violation of R.C. 2919.25(A). Therefore, Sahnd's conviction for domestic violence was not against the manifest weight of the evidence.

{¶ 29} Sahnd's first and second assignments of error are overruled.

**Conclusion**

{¶ 30} Having overruled both of Sahnd's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.