[Cite as *State v. Wildman*, 2025-Ohio-2793.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30322 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CR 00842 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| STEPHEN A. WILDMAN | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 8, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

Epley, P.J. and Tucker, J., concur.

**OPINION**<br>MONTGOMERY C.A. No. 30322

KYLE J. LENNEN, Attorney for Appellant
MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant Stephen A. Wildman appeals from his conviction for abduction following a bench trial in the Montgomery County Court of Common Pleas. In support of his appeal, Wildman claims that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons outlined below, we disagree with Wildman's claims and affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On March 29, 2023, a Montgomery County grand jury returned an indictment charging Wildman with one count of abduction in violation of R.C. 2905.02(A)(2) and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1). Wildman pled not guilty to the indicted charges and waived his right to a jury. The matter then proceeded to a bench trial on August 9, 2024.

{¶ 3} At trial, the State presented testimony from the alleged victim, 29-year-old C.O. C.O. testified that in March 2023, she was employed as a sales associate at Camping World in the city of Huber Heights, Montgomery County, Ohio. Camping World is a retailer of recreational vehicles and related products. During the time in question, C.O.'s primary job at Camping World was to sell campers to customers.

{¶ 4} C.O. testified that on the afternoon of March 19, 2023, the receptionist at Camping World called her to the front desk to assist a customer. Both C.O. and the

receptionist testified that the customer, later identified as Wildman, specifically requested a female sales associate. The receptionist testified that customers will occasionally request a female or an older, more experienced sales associate, but that customers usually "just get who they get." Tr. 141.

{¶ 5} C.O. testified that Wildman told her he was looking for a toy hauler, which is a kind of camper that has a back that goes down so a recreational vehicle can be driven into it. C.O. recalled that while she was showing Wildman the toy haulers, Wildman was asking her questions about herself and talking about his family. During that time, Wildman told C.O. that his last name came "from the fact that he had a wild past." *Id*. at 94. C.O. testified that her initial impression of Wildman was that he was "a rough and tumble type of guy" who was "pretty energetic" with a "forceful personality." *Id*. at 92.

{¶ 6} During her testimony, C.O. explained that showing a camper is like showing a house in that sales associates go inside campers with customers while they are trying to make a sale. C.O. testified that her "main job is to build rapport with the customer, get them to know you and like you so that they'll buy a camper from you." *Id*. at 97. In doing so, C.O. testified that she tries to "make a connection with [customers], to laugh at what they're laughing at, [and] to find commonalities." *Id*. at 118.

{¶ 7} Continuing, C.O. testified that she took Wildman outside on a golf cart to look at toy haulers located in Camping World's parking lot. C.O. recalled that while they were outside, Wildman told her that she looked cold despite her wearing a wool-like coat over her uniform. C.O. testified that she never told Wildman that she wanted a coat, but that Wildman "became very insistent that [she] wear one of his coats." Tr. 94. C.O. claimed that Wildman was "very forceful about the coat" and that he brought it up multiple times. *Id*. As a result, C.O. acquiesced to the gesture and drove the golf cart to Wildman's truck so that he could

get a coat for her. C.O. testified that after Wildman put his coat on her, she "started to get uncomfortable." *Id*.

{¶ 8} Sometime after getting Wildman's coat, C.O. and Wildman went back inside Camping World's showroom and looked at a fifth-wheel toy hauler. C.O. testified that she took Wildman into the toy hauler and showed him the kitchen area and the bedroom. According to C.O., "the flirtation had really upped in ante" when they went into the bedroom, as C.O. recalled Wildman saying that "he bet [she] was a screamer." *Id*. at 101. C.O. testified that she felt "[p]erturbed and anxious" and "scared for her safety at that point." *Id*.

{¶ 9} Thereafter, C.O. observed Wildman leave the bedroom and enter the toy hauler's bathroom. The bathroom was adjacent to the bedroom, and it was equipped with a sink, toilet, shower, and two exits. *See* State's Exhibits 3, 4 and 5; Defendant's Exhibit A. The bathroom's two exits made it possible to leave the bedroom by walking through the bathroom. *Id*.

{¶ 10} C.O. testified that as she went to walk through the bathroom, Wildman stepped into the shower. While in the shower, Wildman told C.O. that there was "enough room for multiple people in there." Tr. 103. C.O. testified that when she walked by Wildman to exit the bathroom, he forcefully grabbed her waist and pulled her into the shower with him. C.O. testified that Wildman had a "very firm grip" on her and pressed her against him so that they were chest to chest. *Id*. at 104. Wildman then made comments to C.O. about how she looked and turned her around so that she was facing the shower wall. Thereafter, C.O. testified that Wildman bent her over "almost 90 degrees" while he was standing behind her. *Id*. at 105. C.O. then felt Wildman "press[ ] himself to [her]" so that "his groin touched [her] butt." *Id*. C.O. testified that during this time she "could feel his erection." *Id*.

{¶ 11} In response to Wildman's actions, C.O. claimed that she "froze" and "was

panicked." *Id*. at 106. C.O. testified that she "shutdown inside [her]self" and "was just focused on getting out of the shower at that time without causing further incident." *Id*. C.O. testified that she "didn't want to fight because [Wildman] was so much stronger than [her]." *Id*. at 110. She also testified that she "felt really afraid for [her] safety when [she] was in the shower." *Id*. at 123.

{¶ 12} C.O. explained that she did not call out for help because she wanted to get out of the situation without Wildman hurting her. To do this, C.O. testified that she put on an act and continued to be really nice and laugh with Wildman in order to prevent the situation from escalating. C.O. testified that she was eventually able to get out of the shower by "just kind of . . . going along with everything." *Id*. at 106. C.O. then walked out of the toy hauler.

{¶ 13} C.O. testified that she closed Wildman's visit by saying goodbye to Wildman and telling him that they would be in touch. Immediately thereafter, C.O. went to Camping World's sales tower and hid under a desk. C.O. testified that she told the managers of Camping World about the incident with Wildman and that the managers took her to a safe location in the building and contacted the police.

{¶ 14} One of the managers, who happened to be C.O.'s father, testified that, on the afternoon in question, he saw C.O. in the sales tower and noticed that something was wrong. He testified that C.O.'s face was flushed and that she appeared agitated and upset. When he asked what was wrong, C.O. initially could not speak. When C.O. did eventually speak, C.O.'s father recalled that C.O.'s voice was different and that she was "almost manic." Tr. 134. As he continued to ask C.O. what had happened, C.O.'s father observed C.O. fall on the ground while sobbing. Thereafter, C.O. told her father and the other manager of Camping World about the incident with Wildman.

{¶ 15} The other manager, Misty Holly, testified that C.O. had called her from her

father's desk phone and that C.O. had been underneath her father's desk. Holly observed that C.O. had a red face and was distraught and crying. After seeing C.O. in that state, Holly went to find C.O.'s father and told him that C.O. needed him. Holly testified that she called the Huber Heights Police Department and reported what C.O. had told her about the incident with Wildman. One of the responding officers, Sergeant David Culver, testified that C.O. was extremely upset and almost in tears while she was trying to report the incident.

{¶ 16} After the State rested its case, Wildman moved for a Crim.R. 29 acquittal of the abduction and gross sexual imposition charges. The trial court denied the motion, and Wildman proceeded to testify in his defense. During his testimony, Wildman denied C.O.'s version of events. Wildman testified that he never specifically asked for a female sales associate and that C.O. asked to wear one of his coats because she was cold. Wildman also denied making any sexually explicit comments to C.O. In fact, Wildman testified that C.O. was being overly nice and flirtatious with him. Wildman claimed that his conversation with C.O. was normal until C.O. started making comments about them going camping together. Wildman also claimed that C.O. asked him out to dinner.

{¶ 17} With regard to the shower incident, Wildman testified that he stepped into the shower when C.O. followed him into the bathroom of the fifth-wheel toy hauler. Wildman recalled looking down at the shower floor and making a comment about the dirty footprints he saw and how "there's been a lot of people in this shower." *Id*. at 192. Wildman claimed that C.O. then stepped into the shower with him.

{¶ 18} Wildman testified that when C.O. stepped into the shower, he put his hands up and was careful not to touch her. He testified that stepping into a shower with a man is inappropriate and that the situation made him uncomfortable because he had a girlfriend at the time. Wildman denied pulling C.O. into the shower or pushing her down. He claimed that

he simply had to "shove by her to get out." *Id*. at 193. Wildman testified that after he exited the shower, he told C.O. the fifth-wheel toy hauler was not what he wanted and for her to call him if she found something else.

{¶ 19} After hearing the foregoing testimony and the parties' closing arguments, the trial court found Wildman guilty of abduction but not guilty of gross sexual imposition. The trial court thereafter sentenced Wildman to a period of community control sanctions not to exceed five years. As part of his community control sanctions, Wildman was prohibited from entering Camping World and from having any contact with C.O.

{¶ 20} Wildman now appeals from his conviction for abduction, raising two assignments of error for review.

**First Assignment of Error**

{¶ 21} Under his first assignment of error, Wildman claims that his conviction for abduction should be reversed because it was not supported by sufficient evidence. We disagree.

{¶ 22} "When a defendant challenges the sufficiency of the evidence, [he] is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Matthews*, 2018-Ohio-2424, ¶ 7 (2d Dist.), citing *State v. Hawn*, 138 Ohio App.3d 449, 471 (2d Dist. 2000). " 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt.' " *Id*., quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997), citing *Jenks* at 273.

**{¶ 23}** As previously discussed, Wildman was convicted of abduction in violation of R.C. 2905.02(A)(2). A violation of that statute occurs when "without privilege to do so, one knowingly restrains the liberty of another person by force or threat under circumstances that create a risk of physical harm to the victim or place the victim in fear." *State v. Turner*, 2024-Ohio-684, ¶ 69 (2d Dist.).

**{¶ 24}** " 'Restraining an individual's liberty means limiting or restraining their freedom of movement. The restraint need not be for any specific duration or in any specific manner.' " *Id*., quoting *State v. Williams*, 2017-Ohio-5598, ¶ 19 (10th Dist.). " 'Even . . . "momentary" restraint may qualify as [a]bduction, if it produces the required risk of physical harm to, or fear in, the victim.' " *Id*., quoting *State v. Saylor*, 1995 WL 276103, *9 (2d Dist. May 12, 1995), quoting *State v. Messineo*, 1993 WL 3520, *6 (4th Dist. Jan. 6, 1993).

**{¶ 25}** "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12); *see State v. Steele*, 2013-Ohio-2470, ¶ 26.

**{¶ 26}** Based on the foregoing standards, the State was required to present evidence establishing that, without any legal immunity, license or right, Wildman knowingly: (1) used force or made threats directed at C.O.; (2) restrained C.O.'s liberty; and (3) either created a risk that C.O. would suffer physical harm or caused C.O. to experience fear. *See State v.*

*Grieshop*, 2020-Ohio-392, ¶ 17 (2d Dist.), citing R.C. 2905.02(A)(2).

{¶ 27} Upon review, we find that any rational factfinder viewing C.O.'s testimony in a light most favorable to the State could have concluded beyond a reasonable doubt that all the essential elements of abduction were satisfied. This is because C.O.'s testimony established that Wildman knowingly and without privilege used force on her when he physically grabbed her waist, pulled her into the shower, pressed her against his chest, turned her around, and bent her over. Such force would have limited C.O.'s freedom of movement so as to constitute a restraint of liberty. C.O. also specifically testified that she feared for her safety while she was in the shower with Wildman.

{¶ 28} Wildman argues that the restraining-liberty element of abduction was not satisfied because C.O. testified that she was "going along with everything" and "let [herself] be turned around" in the shower. Tr. 106. According to Wildman, this testimony indicated that C.O. was a willing participant who consented to Wildman's actions. In so arguing, Wildman glosses over the portions of C.O's testimony explaining that she froze and panicked when Wildman grabbed her and that she chose to play along and not fight back because Wildman was stronger than her and she did not want to escalate the situation. "Lack of verbal or physical resistance or submission resulting from an accused's use of force, threat of force, or placing another person in fear does not constitute consent." R.C. 5924.120(L). Moreover, the momentary restraint exerted when Wildman grabbed C.O.'s waist and pulled her into the shower was sufficient to establish the restraining-liberty element given that it caused C.O. to experience fear. The fact that C.O. did not fight back or call out for help during the incident was immaterial.

{¶ 29} Because the State presented evidence establishing that Wildman knowingly and without privilege used force on C.O. that restrained her liberty and caused her to

experience fear, his conviction for abduction was supported by sufficient evidence.

{¶ 30} Wildman's first assignment of error is overruled.

## Second Assignment of Error

{¶ 31} Under his second assignment of error, Wildman claims that his conviction for abduction was against the manifest weight of the evidence. We again disagree.

{¶ 32} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.), citing *State v. Hufnagel*, 1996 WL 501470 (2d Dist. Sept. 6, 1996). When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Reversing a conviction under a manifest weight theory "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175. "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2014-Ohio-3432, ¶ 24 (2d Dist.), citing *Wilson* at ¶ 14.

{¶ 33} "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *State v. Sahnd*, 2024-Ohio-5840, ¶ 26 citing *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997). " '[T]he fact finder is free to believe all, part or none of the

testimony of each witness appearing before it.' " *State v. Lewis*, 2024-Ohio-756, ¶ 12 (2d Dist.), quoting *State v. Petty*, 2012-Ohio-2989, ¶ 38 (10th Dist.). (Other citation omitted.) " '[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *State v. Sutherland*, 2022-Ohio-3079, ¶ 47 (2d Dist.), quoting *In re M.J.C.*, 2015-Ohio-820, ¶ 35 (12th Dist.). Therefore, " '[m]ere disagreement over the credibility of witnesses is not [a] sufficient reason to reverse a judgment.' " *Lewis* at ¶ 12, quoting *Petty* at ¶ 38.

{¶ 34} We note that the trial court in this case stated multiple times that it found C.O. to be a credible witness. Despite this, the trial court apparently chose not to credit the portion of C.O.'s testimony supporting the charge for gross sexual imposition,[1] i.e., that Wildman bent her over "almost 90 degrees" while he was standing behind her and "pressed himself into [her]" so that "his groin touched [her] butt" and caused her to "feel his erection." Tr. 105. The trial court did, however, find Wildman guilty of abduction and thus credited C.O.'s testimony that Wildman had grabbed her waist, pulled her into the shower, and pressed himself against her so as to cause her to fear for her safety.

{¶ 35} As previously discussed, the trial court, as trier of fact, was free to credit any portion of the trial testimony. The facts that the trial court chose to believe some, but not all, of C.O.'s testimony and that Wildman's testimony conflicted with C.O.'s version of events does not mean that his conviction for abduction was against the manifest weight of the

---

[1] Gross sexual imposition under R.C. 2907.05(A)(1) prohibits a person from having "sexual contact with another . . . when . . . [t]he offender purposely compels the other person . . . to submit by force or threat of force." The term " '[s]exual contact' means any touching of an erogenous zone of another, including without limitation the . . . buttock . . . for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). It is well established that "[s]exual contact does not require that the offender have skin-to-skin contact with an erogenous zone of the victim; a touching of an erogenous zone covered by the victim's clothing is sufficient." (Citation omitted.) *State v. Jones*, 2013-Ohio-3760, ¶ 21 (2d Dist.).

evidence. Based on C.O.'s testimony regarding the shower incident and the testimony of C.O.'s father, Misty Holly, and Sgt. Culver describing how upset C.O. was after she parted ways with Wildman, the evidence does not weigh heavily against the conviction, and we are unpersuaded that the trial court lost its way in finding Wildman guilty of abduction. Therefore, Wildman's conviction for abduction was not against the manifest weight of the evidence.

{¶ 36} Wildman's second assignment of error is overruled.

## Conclusion

{¶ 37} Having overruled both of Wildman's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.